IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Craig Shane Rolen, | ) | C/A No. 0:15-2045-BHH-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Stevenson, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Craig Shane Rolen, a self-represented state prisoner, filed this petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter comes before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on

the respondent's motion for summary judgment.  (ECF No. 10.)  Pursuant to Roseboro v. Garrison,

528 F.2d 309 (4th Cir. 1975), Rolen was advised of the summary judgment and dismissal procedures

and the possible consequences if he failed to respond adequately to the respondent's motion.  (ECF

No. 12.)  Rolen filed a response in opposition to the respondent's motion.  (ECF No. 21.)  Having

carefully considered the parties' submissions and the record in this case, the court concludes that the

respondent's motion for summary judgment should be granted and Rolen's Petition denied.

## BACKGROUND

Rolen was indicted in November 2003 in Greenville County for murder (03-GS-23-8222).

(App. at 267-68, ECF No. 11-1 at 269-70.)  Rolen was represented by Everett P. Godfrey, Jr.,

Esquire, and on April 11, 2005 pled guilty as charged.  (App. at 1-15, ECF No. 18-1 at 3-17.)  The

circuit court sentenced Rolen to twenty-five years' imprisonment.  (App. at 14-15, ECF No. 11-1 at

16-17.)  Rolen did not appeal his plea or sentence.

Rolen filed a *pro se* application for post-conviction relief on August 5, 2005 ("2005 PCR") in which he raised claims that his guilty plea was involuntary, and that counsel was ineffective for (1) not objecting to the sentence; (2) not objecting to Rolen's involuntary plea in court; (3) not contacting three alibi witnesses; and (4) not investigating. (See <u>Rolen v. State of South Carolina</u>, 05-CP-23-4930; App. at 17-22, ECF No. 11-1 at 19-24). The State filed a return. (App. at 26-30, ECF No. 11-1 at 28-32.) On April 19, 2006, the PCR court held an evidentiary hearing at which Rolen appeared and testified and was represented by Caroline Horlbeck, Esquire. By order filed July 14, 2006 the PCR court denied and dismissed with prejudice Rolen's 2005 PCR application. (App. at 254-63, ECF No. 11-1 at 256-65.)

On appeal, Rolen was represented by Wanda H. Carter, Esquire, Deputy Chief Attorney with the South Carolina Commission on Indigent Defense, who filed a <u>Johnson</u>[1] petition for a writ of certiorari that presented the following issues:

> 1.     Trial counsel erred in failing to move for the withdrawal of the plea or in the alternate to have the plea vacated after petitioner asserted his innocence during the plea proceedings.
>
> 2.     The PCR court erred in denying petitioner's allegation that he did not voluntarily waive his right to a direct appeal in the case.

(ECF No. 11-3.) By order issued December 18, 2007, the South Carolina Supreme Court directed the parties to address the following questions:

---

[1] <u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988) (applying the factors in <u>Anders v. California</u>, 386 U.S. 738 (1967) to post-conviction appeals). <u>Anders</u> requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. <u>Anders</u>, 386 U.S. at 744.



1.     Was counsel ineffective in failing to move to withdraw petitioner's guilty plea after petitioner repeatedly asserted his innocence after the plea was accepted but before petitioner was sentenced?

2.     Was counsel ineffective in failing to advise petitioner that he had a right to a direct appeal after petitioner repeatedly asserted his innocence during the guilty plea?

(ECF No. 11-4.)  Counsel for Rolen filed a petition for a writ of certiorari on January 17, 2008 (ECF No. 11-5), and the State filed a return (ECF No. 11-6).  The South Carolina Supreme Court granted the petition for a writ of certiorari on March 20, 2008 and directed the parties to file briefs.  (ECF No. 11-7; see also ECF Nos. 11-8 & 11-9.)  By order filed June 29, 2009, the South Carolina Supreme Court reversed the PCR court's order, and remanded the case "to the point after formal acceptance of the guilty plea."  (ECF No. 11-10 at 7.)  Additionally, the court stated that "[i]f the plea court grants the motion to withdraw the plea, the case shall be placed on the trial docket and proceed in the usual manner; if the court denies the motion to withdraw the plea, the prior sentence will stand, and Petitioner may pursue his right to a direct appeal."  (Id.)  The State file a petition for rehearing (ECF No. 11-11), which was denied by order filed October 21, 2009 (ECF No. 11-12).  The remittitur was issued on October 21, 2009.  (ECF No. 11-13.)

The circuit court held a hearing on April 5, 2010, at which time counsel for Rolen moved to withdraw Rolen's guilty plea.  (ECF No. 11-14 at 19-33.)  By order issued June 3, 2010, the circuit court denied Rolen's motion.  (ECF No. 11-14 at 35.)

Rolen timely appealed and was represented by LaNelle Cantey DuRant, Esquire, Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a brief on Rolen's behalf that raised the following issue:

> Did the circuit court err in denying Rolen's motion to withdraw his guilty plea when he denied his guilt; explained that he confessed only because he was depressed and suicidal over losing his children; and he provided three names of alibi witnesses. The court's ruling on remand, consonant with the state's argument that the state would be prejudiced because the case was too old to find witnesses, was prejudicial to Rolen and not in keeping with the purpose of the remand as directed by the Supreme Court in Rolen v. State, 384 S.C. 409, 683 S.E.2d 471 (2009)?

(ECF No. 11-16.)  On February 29, 2012, the South Carolina Court of Appeals affirmed Rolen's conviction.  (State v. Rolen, Op. No. 2012-UP-085 (S.C. Ct. App. Feb. 29, 2012), ECF No. 11-18.) The remittitur was issued on March 16, 2012.  (ECF No. 11-19.)

Rolen filed a *pro se* application for post-conviction relief on April 5, 2012 ("2012 PCR") in which he raised the following claims:

> I gave INV Wesley Smith a false confession to a murder I knew nothing about, then I let Att Bill Godfrey talk me in to a plea because he wasn't paid enough to do my trial.  I'm innocent.  At the plea I told the family of the victim the truth, I didn't do it.  My lawyer failed to make motion to withdraw at plea.  He failed again at motion hearing when new issue was raised.  My lawyer, Bill Godfrey failed to object to new issue raised by solicitor Kris Hodge at Motion hearing, held in April, 2010.  She said the case was too old to go to trial.  That was going against the Supreme Court ruling. Opinion # 26678.

(See Rolen v. State of South Carolina, 12-CP-23-2385, ECF No. 11-20) (errors in original).  The State filed a return and motion to dismiss.  (ECF No. 11-14 at 47-52.)  On February 19, 2014, the PCR court held an evidentiary hearing at which Rolen appeared and testified and was represented by Mills Ariail, Esquire.  By order filed March 25, 2014 the PCR court denied and dismissed with prejudice Rolen's 2012 PCR application.  (ECF No. 11-14 at 77-83.)

On appeal, Rolen was represented by Kathrine H. Hudgins, Esquire, Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a <u>Johnson</u>[2] petition for a writ of certiorari that presented the following issue:

> Did the PCR judge err in refusing to find counsel ineffective when, the South Carolina Supreme Court found counsel ineffective for failing to move to withdraw the guilty plea and remanded to the trial court to allow Petitioner to move to withdraw the guilty plea, and during the motion to withdraw the guilty plea, which was denied by the plea judge, the same counsel, already found to have been ineffective, represented Petitioner again and failed to object when the assistant solicitor argued that the State would be severely prejudiced if the motion to withdraw the guilty plea was granted?

(ECF No. 11-22.)  Rolen filed a *pro se* response to the <u>Johnson</u> petition in which he stated as follows:

> When I was taken back to Greenville to make this motion, I was told by Bill Godfrey, that Solicitor Kris Hodge sent him to represent me.  I did not want him to. . . . If it were this courts ruling to go back like it was 2005, same solicitor, same judge, same lawyer.  Then wasn't it wrong for Bill Godfrey not to object to solicitors new issue she raised at the motion heaing that the case was too old to try.  This was in April, 2010. . . .
>
> Bill Godfrey has failed to speak up twice and it has severley cost me.  Please look at all this closely.  I spoke up at my plea hearing because I'm innocent.  I gave a false confession.  That's why I spoke up.  Attorney Bill Godfrey had me scared I was gonna get a life sentence.

(ECF No. 11-24 at 1-2) (internal citations omitted, errors in original).  On February 4, 2015, the South Carolina Supreme Court issued an order denying Rolen's petition for a writ of certiorari.

---

[2] <u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988) (applying the factors in <u>Anders v. California</u>, 386 U.S. 738 (1967) to post-conviction appeals).  <u>Anders</u> requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  <u>Anders</u>, 386 U.S. at 744.



(ECF No. 11-25.)  The remittitur was issued on February 20, 2015.  (ECF No. 11-26.)  This action followed.

## FEDERAL HABEAS ISSUES

Rolen's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  The Plea judge abused his discretion in denying petitioner's Motion to withdraw guilty plea

**Ground Two:**  Ineffective Assistance of Counsel
**Supporting Facts:**   Trial counsel was ineffective for failing to object to what the Solicitor said at the motion hearing on remand. . . .

**Ground Three:**  Ineffective Assistance of Counsel failure to investigate and prepare for trial
**Supporting Facts:**  Trial Counsel was not diligent when it came to him locating petitioner's alibi witnesses and using their testimony to prepare a defense.  These alibi witnesses could have played a bit part in petitioner's defense to help prove he was innocent.

(Pet., ECF No. 1) (errors in original).

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).



In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000); <u>see also</u> <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011); <u>Humphries v. Ozmint</u>, 397 F.3d 206 (4th Cir. 2005); <u>McHone v. Polk</u>, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u>, 562 U.S. at 101 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)); <u>see also</u> <u>White</u>, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting <u>Harrington</u>, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. <u>Harrington</u>, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. <u>See id.</u> at 98 (finding that "[t]here

*PJG*

is no text in [§ 2254] requiring a statement of reasons" by the state court).  If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id.  Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id.  Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.     Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").  To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal

quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

### D.    Summary Judgment Motion

#### 1.    Ground One—Not Cognizable

In his first claim for relief, Rolen asserts that the plea court abused its discretion in denying his motion to withdraw his plea. (Pet., ECF No. 1 at 5.) The respondent argues that Rolen's first claim is not cognizable as it fails to allege any violation of federal law. (Respt.'s Mem. Supp. Summ. J., ECF No. 11 at 28-29.) This court agrees.

It is well established that the scope of federal habeas review is limited to questions of either the federal Constitution or laws, and does not extend to reexamination of a state court's interpretation and application of a state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998). As explained by the respondent, in South Carolina criminal cases, "once a defendant enters a guilty plea, whether to allow withdrawal of the plea is left to the sound discretion of the circuit court." State v. Thomason, 584 S.E.2d 143, 146 (S.C. Ct. App. 2003) (citing State v. Riddle, 292



S.E.2d. 795, 796 (S.C. 1982)). The decision to permit a defendant to withdraw his plea invokes the trial court's discretion, the abuse of which is not a basis for habeas corpus relief. See e.g., Sinistaj v. Burt, 66 F.3d 804, 808 (6th Cir. 1995) (finding no authority for the proposition that a state court's abuse of discretion in denying a defendant's motion to withdraw a waiver of jury trial violates the United States Constitution); see also Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). Since this claim is not cognizable in a federal habeas petition, summary judgment should be granted as to Ground One.

### 2.    Ineffective Assistance of Counsel Generally

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while "'[s]urmounting Strickland's high bar



is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Rolen's petition. Therefore, the court turns to the question whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts.

### a.    Ground Two

In Ground Two, Rolen argues that plea counsel was ineffective for failing to object to comments made by the State during the hearing in which Rolen moved withdraw his guilty plea. (Pet., ECF No. 1 at 7, 19-20.) Additionally Rolen asserts that he believes it was wrong for him to be represented on remand by the same attorney who had been found ineffective for failing to move to withdraw his guilty plea during the initial change of plea proceeding. (Id. at 20.)

PJG

After a careful review of the parties' arguments and the entire record, the court finds Rolen's Ground Two is without merit. Because Rolen's case has a somewhat unusual procedural history, the facts giving rise to Rolen's Ground Two are set forth in detail below.

### i. Background

At Rolen's initial change of plea proceeding, he was questioned by the court as follows:

BY THE COURT:
Q.    All right, you are Craig Shane Rolin or Rolen?
A.    Rolen.
Q.    And how old are you, sir?
A.    38.
Q.    How much education do you have?
A.    8th grade.
Q.    Do you know how to read and write?
A.    Yes, sir.
Q.    And have you ever worked?
A.    Yes, sir.
Q.    What kind of work have you done?
A.    I'm a truck driver.
Q.    Okay.  Now, Mr. Godfrey is your lawyer?
A.    Yes, sir.
Q.    Have you talked with him as often and for as long as you feel necessary for
       him to properly represent you?
A.    Yes, I do.
Q.    And when you've talked with him have you understood your talks with him?
A.    Yes, sir.
Q.    Has he done everything for you that you've asked him to do?
A.    Yes, sir.
Q.    Has he done anything at all that you don't like?
A.    No, sir.
Q.    So are you fully and completely satisfied with him representing you?
A.    Yes, sir.
Q.    No complaints to make against your lawyer?
A.    No, sir.
Q.    Now, has anyone used any force or made any threats against you in order to
       get you to plead guilty?
A.    No, sir.
Q.    Has anybody promised you a lighter sentence if you pled guilty?
A.    No, sir.
Q.    Has anybody promised you anything for pleading guilty?



A.       No, sir.

Q.       Are you pleading voluntarily, that is of your own freewill?

A.       Yes, sir.

. . . .

Q.       Now you understand the maximum sentence is up to 30 years in prison?

A.       I do, sir.

Q.       Now, do you also understand, sir, that you don't have to plead guilty, you've got a perfect right to stand trial by jury, do you understand that?

A.       Yes, sir.

Q.       Indeed a jury's been selected for your case.  You've got a perfect right to go ahead and continue with that jury trial; do you understand that?

A.       Yes, sir.

Q.       If you continue with your trial Mr. Godfrey can cross-examine all witnesses who testify against you, you will not have to take the stand and testify or present evidence because that's your Constitutional right.  The burden remains on the State to prove you guilty beyond a reasonable doubt.  Do you understand all those rights?

A.       I do, sir.

Q.       And you give all those rights up when you plead guilty; is that what you want to do?

A.       Yes, sir, I do.

Q.       Are you under the influence of any alcohol, drugs or any other substance right at this moment?

A.       Not at this moment.

Q.       You're sober?

A.       I am very sober.

Q.       You know what you're doing?

A.       Yes, sir.

Q.       You want to plead guilty?

A.       Yes, sir.

(ECF No. 11-1 at 5-8.)  Next, the assistant solicitor was asked to tell the court about the plea:

On August 18th of 2001 the victim in this case, Kedrick Mahon was reported missing by his girlfriend.  He was supposed to pick her up from work early in the afternoon of the 17th around 3:00 or 4:00 and he never showed up.  He did not come home that night or the following day.  On October the 4th of 2001 his body was found in the defendant's car at the bottom of a ravine off of Cheryl Court here in Greenville County.

The body was very badly decomposed and in an autopsy Dr. Ward could not identify manner of death but did not rule out homicide due to the circumstances surrounding the victim[']s disappearance and death.  And the fact that he had no skeletal fractures or evidence of any natural disease process.



Investigator Smith of the sheriff's office worked this case for approximately two years. He followed up with several witnesses who stated that the victim was last seen with this defendant. And that they were also seen fighting in an area near where the victim was found. That the victim was bleeding. An additional witnesses [*sic*] said that the defendant made statements to them after the fact that he had in fact stabbed the victim and then the victim had jumped into a car and he had run him off the road into this ravine.

The defendant was formally charged and arrested for murder of the victim on July 16th of 2003. On September the 9th of 2004 the defendant voluntarily came forward, contacted the Investigator Smith and gave a full confession stating that he did, in fact, kill the victim by stabbing him several times and running him off the road where his car landed in the ravine that it was found in.

(<u>Id.</u> at 8-9.) The court then asked Rolen about the facts of the case:

BY THE COURT:
Q.     Now you've heard the facts related to me; is that what happened, sir?
A.     Yes, sir.
Q.     All right. Now, I understand you turned yourself in, you made a statement to the police, when you did that, did they make you sign that confession?
A.     No, sir.
Q.     You did so freely and voluntarily?
A.     Yes, sir.
Q.     No one put any pressure on you to do that, is that what you're telling me?
A.     That's right.
Q.     And what you said in that confession is true?
A.     That's right.

(<u>Id.</u> at 8-10.) The court then accepted the guilty plea as being voluntarily made and as having a substantial factual basis. (<u>Id.</u> at 10.) Plea counsel asked that the court be merciful and impose a twenty-year sentence, noting that Rolen was "indeed remorseful about this." (<u>Id.</u>) Rolen addressed the court, "I just ask that you, please, have mercy on me. Because I'm not a bad person. Me and Kedrick was good friends and things just went bad between us. Kedrick was a good man. A real good man. He wasn't like most drug dealers. He was nice. He wasn't no mean type person. He was a good man." (<u>Id.</u> at 14.)



The victim's family was present at the change of plea hearing and family members were given an opportunity to speak. (Id. at 13-15.) After hearing from the victim's family, Rolen interjected,

> MR. ROLEN: All right, this has went on far enough, I didn't kill this man. This has went too far, I ain't doing this. I didn't kill your brother.
> MS. CAMP [VICTIM'S FAMILY MEMBER]: You just said it.
> MR. ROLEN: Yeah because I'm thinking I'm going to get a life sentence. I can't do this.
>     I can't do it, Renee. I didn't kill this man, I can't do this.

(Id. at 15.) The court responded, "Well, sir, you've already done it." (Id. at 16.) The plea judge imposed a sentence of twenty-five years' imprisonment. (Id. at 17.)

In his first PCR application, Rolen argued that plea counsel was ineffective for failing to move to withdraw the guilty plea after he protested his innocence multiple times. The PCR court denied the claim. (ECF No. 11-1 at 262-63.) However, the South Carolina Supreme Court reversed the PCR court, finding that plea counsel was ineffective and that there was prejudice. (ECF No. 11-10 at 4-6.) The South Carolina Supreme Court determined that because the plea judge found that Rolen's plea was voluntary and supported by a factual basis and the plea was formally accepted, Rolen forfeited his ability to withdraw the plea as a matter of right. (Id. at 5.) Hence, the case was remanded "to the point in the guilty plea proceeding in which counsel should have sought to withdraw the plea." (Id.)

On remand, plea counsel made a motion that Rolen be permitted to withdraw his guilty plea. (ECF No. 11-14 at 21-26.) Counsel explained the circumstances surrounding Rolen's plea: that Rolen had first received an offer for ten years on voluntary manslaughter but while he was out on bond and getting over his drug addiction, his children were removed from his care and his parental rights terminated, and Rolen became depressed and was placed on medication when he ultimately



confessed.  (Id. at 21-26.)  Plea counsel stated  that when he visited Rolen at the jail, he asked Rolen

why he confessed, and Rolen told counsel that he just wanted to die, that if he could, he wanted the

death penalty.  (Id. at 23.)  Counsel further noted that Rolen appeared to be suicidal.  Plea counsel

recounted:

> Craig Rolen kept stating to me that he was not guilty, even after he signed the
> confession.  And he kept telling me that he wanted to have a trial.  Because of the
> new information, it put a different complexion on the case for the State.  And instead
> of a 10-year offer, we received a 20-year offer. . . .
>
> . . . Craig told me that he wanted to go forward with the trial and that he wanted to
> testify and recant his statement.  And he said, I believe that the jury will understand
> that I was lying on that statement.  I told Craig Rolen that, based on my experience
> before the Court, defendants who recant statements rarely are believed.  He told me
> that he preferred to go forward with the trial.
>
> On the day of the trial, we struck a jury. . . . Rolen asked me, he said, What
> do you think my chances are?  And I said, Craig, you signed a statement and you put
> on the statement that you didn't want me there.  And I said, There is a very strong
> likelihood that the jury is going to find you guilty.  And he said, Well, if that's the
> case, then I think I'm going to go ahead and plead.

(ECF No. 11-14 at  23-24.)  Rolen spoke on his own behalf and proclaimed his innocence.

The state opposed the motion and noted that the plea colloquy was thorough.  The assistant

solicitor pointed out that Rolen had answered all of the court's questions competently and coherently

and that he was not a defendant who was "hemming and hawing in answers."  (Id. at 27-28.)

Further, the assistant solicitor noted that at the initial change of plea proceeding, Rolen stated he was

satisfied with his counsel, that the factual recitation set forth by the state was correct and that he had

indeed confessed.  The assistant solicitor explained to the court that Rolen apologized to the family

and that it was not until family members addressed the court insisting that the court impose the

maximum sentence that Rolen proclaimed his innocence.  The assistant solicitor also commented

on the prejudice that would be suffered by the state if the court were to grant Rolen's motion,



> If you are inclined to grant the motion to withdraw the plea, Your Honor, the State would be severely prejudiced. The case already was five years old almost at the time of the trial. There were many -- this was a drug transaction-type thing. And the main witness in the case was a crack-addict prostitute who was an eyewitness. We had a very hard time finding her five years ago. And, at this point, I'm not sure that she could be found, if she's even alive. I've been told she was HIV positive two or three years ago when she was involved in another case. We would be substantially prejudiced, at this point, if Your Honor would choose to let him withdraw his guilty plea.

(ECF No. 11-14 at 29-30.)

The plea court denied Rolen's motion to withdraw his guilty plea, stating, "[A]t the time, I went through the procedure and asked you all these questions. And I made the factual finding that your plea was freely and voluntarily made. And I don't see that you've given me or shown me any reason why I should change my opinion now." (ECF No. 11-14 at 32.)

## ii.     PCR Court's Decision

In his 2012 PCR application, Rolen argued that plea counsel was ineffective for failing to object to the solicitor's above-cited comment regarding prejudice. The PCR court denied Rolen's claim, finding that he failed to meet his burden of proving counsel should have objected to the solicitor's remarks. (ECF No. 11-14 at 81-82.) The PCR court explained,

> Applicant has failed to demonstrate that the assistant solicitor's comment was so improper that counsel was deficient in failing to object. Regardless, this Court also finds the Applicant has failed to demonstrate the assistant solicitor's comment prejudiced his case. Counsel testified the witness referenced by the solicitor could not be found back in 2005, when the Applicant originally pled guilty. Counsel testified there was no prejudicial effect from the solicitor's comment. This Court agrees. This Court finds there is nothing in the record to suggest the judge took the solicitor's comment into consideration in denying the motion to withdraw the guilty plea in this case. The Applicant failed to meet his burden of proving otherwise and this Court will not engage in speculation. See Frasier v. State, [570 S.E.2d 172, 174 (S.C. 2002)].

(Id.)

### iii.    Discussion

As an initial matter, in denying and dismissing Rolen's application, the PCR court found counsel's testimony credible and Rolen's testimony not credible.  (ECF No. 11-14 at 81.)  Rolen's response in opposition to the respondent's motion for summary judgment (ECF No. 21) does not challenge the PCR court's credibility finding.  See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

Further, the PCR court reasonably found that counsel was not deficient in failing to object to the assistant solicitor's remarks regarding prejudice.  A defendant does not have an absolute right to withdraw a guilty plea.  See Thomason, 584 S.E.2d 143, 146; see Riddle, 292 S.E.2d at 796 (holding that the withdrawal of a guilty plea is generally within the sound discretion of the trial judge); see also  United States v. Bowman, 348 F.3d 408, 413 (4th Cir. 2003).  As cited above, in opposing Rolen's motion to withdraw, the assistant solicitor requested the court consider the thorough plea colloquy and the timing of Rolen's proclamation of innocence.  The assistant solicitor asked the court to consider the age of the case and referenced the prejudice to the government and difficulty locating witnesses several years after the incident.  (ECF No. 11-14 at 81-82.)  The court cannot find that the mention of prejudice is in and of itself inappropriate.  The court notes that in federal criminal cases, to determine whether a defendant has shown a fair and just reason for withdrawal, a trial court considers six factors:  (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly



asserted legal innocence, (3) whether there has been a delay between entry of the plea and the filing of the motion, (4) whether the defendant has had close assistance of competent counsel, (5) whether withdrawal will prejudice the government, and (6) whether withdrawal will inconvenience the court and waste judicial resources. Bowman, 348 F.3d at 414. In any case, as found by the PCR court, there is nothing in the record to suggest the plea court took the solicitor's comment into consideration in denying the motion to withdraw the guilty plea in this case. In fact, in denying the withdrawal motion, the plea court concluded by noting the thorough plea colloquy, its finding that the plea was freely and voluntarily made, and that Rolen had not provided any reason why the court should change its opinion. (ECF No. 11-14 at 32.) Accordingly, Rolen cannot show "there was no reasonable basis" for the state appellate court to deny relief. Harrington, 532 U.S. at 98. As observed by the Harrington court, "[t]he pivotal question is whether a state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. In reference to the assistant solicitor's prejudice remark, Rolen cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1).

Finally, to the extent Rolen argues that plea counsel should not have represented him in the hearing on his motion to withdraw his plea since plea counsel had already been found ineffective for failing to make such a motion during Rolen's guilty plea proceedings, the claim is procedurally barred. The claim was not raised to or ruled upon by the PCR court. See Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007) (noting that issues must be raised to and ruled on by the PCR court to be



preserved for appellate review).   Moreover, Rolen's claim is without merit.   To demonstrate ineffective assistance of counsel, a petitioner must show that his counsel was deficient in his representation and he was prejudiced as a result.  Strickland, 466 U.S. at 687.  Rolen has made no such showing.  As set forth in the background section above, plea counsel on remand adamantly argued that Rolen should be allowed to withdraw his guilty plea.  (ECF No. 11-14 at 21-26.)  As discussed above, plea counsel was not ineffective for failing to object to the assistant solicitor's remarks regarding prejudice.  Rolen has not pointed out any additional ways in which plea counsel's performance was deficient and resulted in prejudice to him.  Consequently, the respondent's motion for summary judgment should be granted as to Ground Two.

### b.    Ground Three

In his final claim, Rolen contends that counsel was ineffective for failing to investigate and prepare for trial.  (Pet., ECF No.  at 8.)  Specifically Rolen asserts that counsel was not diligent when it came to locating alibi witnesses and using their testimony to prepare for trial.  (Id.)  Rolen's final claim is without merit.

At the evidentiary hearing on Rolen's 2005 PCR application, Rolen claimed that plea counsel was ineffective when he failed to contact the witnesses that he asked plea counsel to speak with. (ECF No. 11-1 at 46.)  Specifically, Rolen claimed to have asked plea counsel to speak with alibi witnesses—Tamara Thomas, Jimmy Arter, and Cathy Dill.  (Id. at 46-49.) Rolen testified at the PCR hearing that he and those individuals "were together the whole week and we were forging checks." (Id. at 48.)  None of Rolen's alibi witnesses testified at his PCR hearing.

Plea counsel testified that in response to Rolen's request, that he "kept trying to find people that were difficult to find."  (Id. at 77.)  Plea counsel testified that did talk to Tamara Thomas on the



phone several months before trial, and she told him that she was sure that Rolen had not committed the crime.  (Id. at 78.)  However, plea counsel also stated that closer to trial, the solicitor spoke with Thomas, and she apparently affirmed her earlier statement to the police which was not helpful to Rolen because it did not provide a complete alibi.  (Id. at 79.)  Plea counsel (who was retained) also testified that he asked Rolen's sister for money to hire an investigator to track down the witnesses, but plea counsel did not receive any additional funds.  (Id. at 95-96.)  Plea counsel testified he tried to do what investigation he could on his own, but he was unable to find either Arter or Dill.  (Id. at 96.)

The PCR court concluded that Rolen failed to establish either deficient performance or prejudice.  (ECF No. 11-1 at 256-65.)  The PCR court stated:

> This Court finds plea counsel was aware the Applicant wanted him to contact several alibi witnesses.  This Court finds plea counsel either could not find these witness or that he spoke to them and determined their testimony would not be helpful.  This Court specifically notes that, as the purported alibi witnesses Tamara Thomas, Jimmy Ar[t]er, and Kathy Deal did not testify at the evidentiary hearing, any discussion regarding what these individuals would have testified about is purely speculative.  See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme court "has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial.") (emphasis in original).

(ECF No. 11-1 at 261.)

The court finds that Rolen cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting this claim, or that the PCR court made objectively unreasonable factual findings.  A review of the record, including the testimony at the PCR hearing, reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here.  Additionally, the PCR court found trial counsel's testimony



to be credible and found Rolen not to be credible.  (ECF No. 11-14 at 81.)  As referenced in the preceding claim, this credibility determination is also entitled to deference.  See Elmore, 661 F.3d at 850; Wilson v. Ozmint, 352 F.3d 847, 858-59 (4th Cir. 2003).  Plea counsel testified that he spoke with Thomas but that she did not provide a complete alibi.  Further, plea counsel testified that he attempted to track down the additional alibi witnesses, but because the family was not able to secure funding for an investigator, he did what he could on his own.  None of the purported alibi witnesses testified at the PCR hearing.  The PCR court was correct in declining to speculate on what the testimonies of those witnesses would have been.  "The applicant's mere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice."  Bannister v. State, 509 S.E.2d 807, 809 (S.C. 1999) (citing Glover v. State, 458 S.E.2d 538, 540 (S.C. 1995)); see also Jones v. Polk, 401 F.3d 257, 269 (4th Cir. 2005).  Rolen has not clearly shown that the PCR court's credibility determinations were without support.  The court finds that the PCR court reasonably applied Strickland to Rolen's claim that plea counsel was ineffective in failing to investigate and prepare for trial.  Consequently, the court finds that the respondent's motion for summary judgment should be granted as to Ground Three.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 10) be granted and Rolen's Petition denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 19, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

Page 23 of  24

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).